UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JANICE RODGERS, individually and on behalf of all others similarly situated, | CASE NO. G-14-cv-0295 |
| Plaintiffs, | |
| v. | CLASS/COLLECTIVE ACTION |
| PROFESSIONAL EMPLOYMENT GROUP, INC., et al., | |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS & COLLECTIVE ACTION SETTLEMENT**

Respectfully submitted,

**BRUCKNER BURCH PLLC**

Richard J. (Rex) Burch
Texas Bar No. 24001807
S.D. Tex. No. 21615
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

**Attorneys for Rodgers and the Classes**

# TABLE OF CONTENTS

1. SUMMARY OF THE CASE, ARGUMENT, AND ISSUES. ..................................................................1

2. PROCEDURAL BACKGROUND ....................................................................................................1

3. THE BASIC SETTLEMENT TERMS. ..............................................................................................3

    A. The California Class and the Non-California Class/Collective. ...............................3

    B. The Maximum Settlement Amount. .........................................................................3

    C. Allocation to Class Members. ..................................................................................3

    D. Administration of the Notice Process. .....................................................................4

    E. Payments under the Settlement. ...............................................................................4

    F. Release of Claims. ....................................................................................................4

4. THE COLLECTIVE AND CLASS ACTION SETTLEMENT APPROVAL PROCESS. ............................4

5. THIS COURT SHOULD CERTIFY THE CLASSES AND APPROVE THE SETTLEMENT ....................5

    A. The Settlement is Fair, Reasonable, and Adequate. .................................................5

    B. The Settlement Resulted from Non-Collusive, Arm's-Length and Informed Negotiations. ...6

    C. The Class Was Provided with Reasonable Notice. ...................................................7

    D. The Class Responded Positively to the Settlement. .................................................7

    E. Rodgers' Enhancement Payment is Reasonable. ......................................................8

    F. The Fees and Costs to Class Counsel Are Reasonable. ............................................9

6. CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Beck-Ellman v. Kaz USA, Inc.*,
   3:10-CV-02134-H-DHB, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ............................ 6, 7

*Belt v. EmCare, Inc.*,
   444 F.3d 403 (5th Cir. 2006) ..................................................................................... 5

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................... 9

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................... 9

*Castilla v. Fogo de Chao*,
   Case No. H-08-869 (S.D.Tex. Oct. 3, 2008) ............................................................ 10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................... 7

*Florin v. Nationsbank of Georgia, N.A.*,
   34 F.3d 560 (7th Cir. 1994) ....................................................................................... 9

*Garcia v. Maintenance, Inc.*,
   Case No. 4:05-cv-03924 (S.D. Tex. June 16, 2006) .................................................. 9

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ..................................................................................... 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................... 4

*In re Apollo Grp. Inc. Sec. Litig.*,
   CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ....................... 8

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ..................................................................................... 6

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................................ 9

*In re Prudential-Bache Energy Income P'ship Sec. Litig.*,
   MDL 888, 1994 WL 150742 (E.D. La. Apr. 13, 1994) ............................................. 9

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ................................................................................................... 9

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................................. 9

*Johnston v. Comerica Mortgage Corp.*,
   83 F.3d 241 (8th Cir. 1996) ................................................................................................... 9

*Klem v. Cnty. of Santa Clara, California*,
   208 F.3d 1085 (9th Cir. 2000) ............................................................................................... 2

*Lynn's Food Stores v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ............................................................................................. 4

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   06 CIV.4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..................................... 8

*Neff v. VIA Metro. Transit Auth.*,
   179 F.R.D. 185 (W.D. Tex. 1998) ......................................................................................... 6

*Negri v. Koning & Associates*,
   216 Cal. App. 4th 392, 156 Cal. Rptr. 3d 697 (2013) ........................................................... 2

*Parker v. Anderson*,
   667 F.2d 1204 n.6 (5th Cir. 1982) ......................................................................................... 6

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................................... 7

*Rawlings v. Prudential-Bache Properties, Inc.*,
   9 F.3d 513 (6th Cir. 1993) ..................................................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................................. 6

*Roussell v. Brinker Int'l, Inc.,*
   441 F. App'x 222 (5th Cir. 2011) .......................................................................................... 5

*Shelton v. Ervin*,
   830 F.2d 182 (11th Cir. 1987) ............................................................................................... 9

*Skadowski v. KBR Tech. Servs., Inc.*,
   Case No. 4:05-cv-4124 (S.D. Tex. Aug. 25, 2006) .............................................................. 10

*Strougo v. Bassini*,
    258 F.Supp.2d 254 (S.D.N.Y. 2003) ............................................................................................... 9

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .................................................................................................... 1, 9

*Vela v. City of Houston*,
    276 F.3d 659 (5th Cir. 2001) ......................................................................................................10

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ....................................................................................................... 9

## Statutes

29 U.S.C. § 216(b) .............................................................................................................. 1, 3, 9

California Labor Code § 510 ...................................................................................................... 2

## Rules

Fed. R. Civ. P. 23(e) ................................................................................................................... 4

## Regulations

29 C.F.R. § 825.106(b) ............................................................................................................... 2

## Other Authorities

Tiffany Allen, *Anticipating Claims Filing Rates in Class Action Settlements*, Class Action Perspectives
    (Rust Consulting, Nov. 2008) ..................................................................................................... 8

*Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004) ..................................... 5, 8

1. **SUMMARY OF THE CASE, ARGUMENT, AND ISSUES.**

Janice Rodgers seeks final certification and settlement approval for an FLSA collective action, and a Rule 23 subclass, covering certain employees that Rodgers alleges were denied overtime pay.

This Court preliminarily approved the Stipulation of Settlement and Release of Claims (the "Settlement") and conditionally certified the classes on November 6, 2014. *See* Dkts. 66 & 70. Per the Court's Order, the Claims Administrator issued notice to the class members informing them of their rights under the Settlement and provided the appropriate CAFA notices. *See* Exhibit 1, Declaration of James Sean McGuire Re: Class Notice Procedures (McGuire Dec.) at ¶¶ 3-9, 11.

By the end of the Court-approved notice process, **more than 80%** of the available funds had been claimed (an impressive rate in a case like this). McGuire Dec. at ¶ 10. None of the class members requested exclusion. Exhibit 2, Declaration of Richard J. (Rex) Burch (Burch Dec.) at ¶¶ 4 & 12. None of the class members objected. *Id.* at ¶¶ 5, 13-15. In sum, the Class's response was uniformly positive.

As preliminarily determined by the Court, the Settlement is fair, reasonable, and confers a substantial benefit upon the Class Members. *See* Dkt. 70. Further, the California Class satisfies all of the requirements of a settlement class under Rule 23, and the Non-California Class meets all requirements for a collective action under 29 U.S.C. § 216(b). *Id.* Therefore, Rodgers requests the Court: (1) grant final certification of the classes; (2) finally approve the Settlement; and (3) dismiss this case with prejudice. All of these issues are review for abuse of discretion. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012). An abuse of this discretion "occurs only when all reasonable persons would reject the view of the district court." *Id.*

2. **PROCEDURAL BACKGROUND.**

Janice Rodgers filed this collective/class action alleging a staffing company and its client (collectively, Defendants) violated federal and California state law by paying hourly employees at the same hourly rate for all hours worked, including hours in excess of 8 or 12 in a day, or 40 in a workweek.

*See* Dkt. 69. In particular, Rodgers alleged Professional Employment Group, Inc. (PEG): (1) failed to pay hourly workers overtime as required by the Fair Labor Standards Act (FLSA); (2) failed to pay daily and weekly overtime as required by the California Labor Code § 510; (3) failed to provide meal and rest breaks as required by California law; (4) failed to pay all wages owed upon termination of employment; (5) violated the Unfair Competition Law by failing to pay wages as required by the FLSA and the California Labor Code. *Id.* Rodgers also alleged PEG's client – Burns & McDonnell – exercised sufficient control over the workers to make them "joint employers" under the FLSA and California state law. Rodgers sought certification of her case as an FLSA collective action for all similarly situated employees nationwide, and as a Rule 23 class for all similarly situated employees employed in California during the period September 11, 2009 to present.

PEG's primary defense was that Rodgers – and the other workers like her – was "properly classified as an exempt employee[s.]" *See* Dkt. 11 at ¶ 15. Plaintiffs alleged this defense would defense would fail because both the FLSA and California state law require employees be paid a "salary" in order to qualify for any exemption that could apply here. *Klem v. Cnty. of Santa Clara, California*, 208 F.3d 1085, 1090 (9th Cir. 2000)(FLSA); *Negri v. Koning & Associates*, 216 Cal. App. 4th 392, 397-98, 156 Cal. Rptr. 3d 697, 700-01 (2013) (California Law). According to Plaintiffs, PEG treated like hourly employees (rendering the exemptions inapplicable).

For its part, Burns & McDonnell argued it was not the PEG workers' "employer" or "joint employer." Because only an "employer" is liable for violations of the FLSA and California's over-time laws, establishing this fact would doom all of Plaintiffs' claims. Plaintiffs responded with evidence they contended would show Burns & McDonnell exercised sufficient control over Plaintiffs' work to qualify as joint employers under the FLSA. *See* 29 C.F.R. § 825.106(b) (discussing the FLSA's standard for "employer" and "joint employer").

On more than one occasion, the parties met in an effort to resolve this dispute. First, Plaintiffs and PEG met before Magistrate Judge Major in the Southern District of California (where this case was

originally venued). That meeting did not result in a settlement. *See* Dkt. 67-1 at ¶ 12. Second, the parties mediated this case before an experienced mediator: Bruce Meyers (www.nadn.org/bruce-meyerson). *Id.* at ¶ 18. Even though Mr. Meyers has significant experience in resolving cases such as this one, the mediation did not result in a settlement. *Id.* Only after months of informed, hard-fought, arms-length negotiations (and two failed mediations) were the parties were able to reach the Settlement. *Id.* at 19.

This Court preliminarily approved the Settlement on November 6, 2014. *See* Dkt 70. As discussed below, the Court's initial determination was correct. The Settlement should, therefore, be finally approved, the classes finally certified, and this case dismissed with prejudice.

3.  THE BASIC SETTLEMENT TERMS.

    A. The California Class and the Non-California Class/Collective.

The Settlement includes two Settlement Classes: (1) a "California Class" under Federal Rule of Civil Procedures 23, covering certain workers employed in California; and (2) a "Non-California Class" – technically a collective action under 29 U.S.C. § 216(b) – covering workers employed outside California. *See* Dkt. 66 at § 1.b.i (defining the Classes).

    B. The Maximum Settlement Amount.

The Settlement obligates Defendant to pay up to a "Maximum Settlement Amount." *See* Dkt. 66 at p. 6, § 3. All Class Member claims, attorneys' fees, expenses, costs, claims administration expenses, employer-side payroll taxes, as well as the enhancement payment to Rodgers, are to be paid out of the Maximum Settlement Amount.

    C. Allocation to Class Members.

Under the Settlement, the Maximum Settlement amount is divided into each Class Members' "Individual Settlement Payment" using each Class Members' number of overtime hours worked, and individual rate of pay, during the periods covered by the Settlement. All Class Members who timely return a Claim Form will receive a payment. *See* Dkt. 66 at p. 9, § 7.a.

### D. Administration of the Notice Process.

The Settlement provides for a court-approved notice process to be administered by Kurtzman Carson Consultants, an experienced claims administrator. *See* Dkt. 66 at p. 23, § 15. As a result of this process, more than 80% of the available funds will be paid out. *See* McGuire Dec. at ¶¶ 3-10.

### E. Payments under the Settlement.

Defendants must deposit the necessary funds within 5 business days of final approval of the Settlement. *See* Dkt. 66 at p. 6, § 3.b. If objections had been filed, payments under the Settlement would be made no later than 14 calendar days after the expiration of the time to file appeals. *Id.* at p. 29, § 17.a.-b. However, no objections were, in fact, filed. *See* Burch Dec. at ¶¶ 5, 13-15.

### F. Release of Claims.

All participating Class Members will release Defendant from all wage claims asserted or that could have been asserted in this lawsuit. *See* Dkt. 66 at p. 24, § 16 (defining the scope of the release).

### 4. THE COLLECTIVE AND CLASS ACTION SETTLEMENT APPROVAL PROCESS.

When reviewing a proposed FLSA settlement, a court should "decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). Similar to the Rule 23 context, the endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

Similarly, a Rule 23 class action may not be dismissed, compromised, or settled without Court approval. Fed. R. Civ. P. 23(e). The settlement as a whole, rather than the component parts, is the proper level of inquiry. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The proposed settlement must "stand or fall in its entirety" and the Court may not "delete, modify or substitute certain provisions." *Id.* The private consensual decision of the parties is entitled to deference. *Id.* at 1027.

**5. THIS COURT SHOULD CERTIFY THE CLASSES AND APPROVE THE SETTLEMENT.**

Pursuant to Rule 23(e)(2) the Court may approve a settlement after a hearing and "on finding that is it fair, reasonable, and adequate." A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004), § 21.6 at 309. The Court preliminarily approved the Settlement and conditionally certified the classes under § 216(b) and Rule 23. *See* Dkt. 70. Now that the Court approved notice process has confirmed the Class Members' approval of the Settlement, this Court should grant final certification and approval of the Settlement.

### A. The Settlement is Fair, Reasonable, and Adequate.

The settlement here is more than fair and reasonable and should be finally approved by this Court. The settlement provides substantial monetary relief – of which the overwhelming majority will actually be paid. *See* Dkt. 66 at p. 6, § 3; *See* McGuire Dec. at ¶ 10. The reasonableness of the proposed settlement is underscored by Defendants' significant legal and factual grounds for defending this action. Defendants dispute that members of the FLSA Class or Rule 23 Class were improperly denied overtime pay and contend that they were provided all compensation as required by law.

Moreover, an adverse decision against either side would likely result in an appeal (further delaying resolution of this matter). Such efforts would likely take years. Indeed, Plaintiffs' counsel have been involved in several wages cases that took years to resolve, even after a *successful* determinations – such as a jury verdict in favor of the plaintiffs - on the merits. *See, e.g., Roussell v. Brinker Int'l, Inc.,* 441 F. App'x 222 (5th Cir. 2011) (more than 6 years of litigation, including more than 2 ½ years of litigation after a jury verdict in plaintiffs' favor); *Belt v. EmCare, Inc.,* 444 F.3d 403 (5th Cir. 2006) (nearly 2 years of litigation after summary judgment rendered in favor of plaintiffs). By contrast, the Settlement ensures timely and substantial relief.

Additionally, the range of recovery also weighs in favor of approving the settlement. Courts consider "the range of possible damages that could be recovered at trial, and, then, by evaluating the

likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point that is fair to the plaintiff settlors." *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 210 (W.D. Tex. 1998)(quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981)). "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982)(5th Cir.), *cert. denied*, 459 U.S. 828 (1982) (internal quotation omitted). As explained above, Plaintiffs were not certain to recover any damages if this case was litigated further, whereas settlement provided an immediate benefit to all Class Members. Moreover, the Settlement represents a reasonable compromise based upon Class Counsel's assessment of the damages at issue. In light of these issues, the recovery is more than fair, reasonable, and adequate.

### B. The Settlement Resulted from Non-Collusive, Arm's-Length, and Informed Negotiations.

Courts favor "deference to the private consensual decision of the settling parties, particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party-in this instance, a private mediator and a magistrate judge." *Beck-Ellman v. Kaz USA, Inc.*, 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *5 (S.D. Cal. Jan. 7, 2013)(internal quotes omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, counsel for both Plaintiffs and Defendant are experienced class action litigators. *See* Dkt. 67 at pp. 5-6. Each has vigorously advocated the positions of their respective clients. Settlement here was reached only after considerable litigation of the underlying case. In reaching the Settlement, counsel on

both sides relied on their respective substantial litigation experiences in similar employment class actions, and thorough analysis of the legal and factual issues presented in this case. Information gleaned from investigation and discovery contributed to the Parties' assessment of the strengths and weaknesses of the case and the benefits of the settlement. All parties engaged in significant fact finding and legal analysis, and have exhaustively evaluated the issues. Dkt. 67-1 at ¶¶ 13-17.

Further, the parties mediated this case before *both* a United States Magistrate Judge (Judge Major, S.D.Ca.) and, after that was unsuccessful, Bruce Meyerson, an experienced mediator (and that mediation failed too). *See* Dkt. 67 at ¶¶ 12 & 18. Thus, it was only after months of informed, hard-fought, arms-length negotiation, and two failed mediations, that the parties were able to reach the proposed Settlement. *Id.* at 19. This "consensus" Settlement, reached with the assistance of a federal magistrate judgment, a seasoned mediator, and able counsel on all sides, is worthy of deference. *Beck-Ellman*, 2013 WL 1748729, at *5.

### C. The Class Was Provided with Reasonable Notice.

To protect the rights of absent class members, the court must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the Court approved the notice process as fair, and notice proceeded through an experienced Administrator without delay or difficulties. *See* McGuire Dec. at ¶¶ 1-9. Thus, the Class Members were provided notice in a reasonable manner.

### D. The Class Responded Positively to the Settlement.

As a result of the notice process, over 80% of available funds have been claimed. Based on the literature from claims administration companies, a claims rate of greater than 80% is at the very highest end of the spectrum anticipated in a settlement like this one. *See* Tiffany Allen, *Anticipating Claims Filing*

*Rates in Class Action Settlements*, Class Action Perspectives (Rust Consulting, Nov. 2008) (in employment settlement, the claim rate "tends to be from 20 to as high as 85 percent."). This participation rate is also much higher than in other wage and hour cases, supporting a finding that this proposed settlement is reasonable and fair. *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC), 2009 WL 5851465, at *2 and *4 (S.D.N.Y. 2009) (541 class members returned claim forms out of 1,323 notices sent, or 40.9% return rate, even though the Court found that the "settlement amount plus interest is substantial and the settlement includes meaningful injunctive relief.").

**Furthermore, none of the Class Members requested exclusion or registered any objection to the Settlement.** This further confirms the Settlement was well received and is reasonable. *See In re Apollo Grp. Inc. Sec. Litig.*, CV 04-2147-PHX-JAT, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012) ("There have been no objections from Class Members or potential class members, which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable and adequate.").

### E. Rodgers' Enhancement Payment is Reasonable.

Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *McClain v. Lufkin Ind., Inc.*, " \s "WSFTA_aaf00696cce74f3f8b3aad315093dd28" \c 3 *McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009); *see also, Manual for Complex Litigation*, § 30.42 (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery"). The proposed enhancement payment to Janice Rodgers recognizes her initiative and efforts on behalf of the FLSA Class and Rule 23 Class, her willingness to delay resolution of her own case to benefit the class, and her execution of a broad release (as opposed to the limited release covering the Class Members). *See* Burch Dec. at ¶¶ 22-29 (describing Ms. Rodgers' efforts on behalf of the Class Members). The amount of the enhancement is tiny in comparison to the Maximum Settlement Amount (far less than 1%) and her own Individual Settlement Payment (approximately 13%). The proposed enhancement payment is reasonable. *Id.* at ¶ 29.

**F. The Fees and Costs to Class Counsel Are Reasonable.**

Plaintiffs, as prevailing parties in a settlement, are entitled to recover their attorney's fees and costs for their claims for unpaid wages. 29 U.S.C. § 216(b). An attorney's fee award is justified where the legal action has produced benefits by way of a voluntary settlement. *Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987), *aff'd*, 853 F.2d 931 (11th Cir. 1988). In this case, the Settlement calls for Class Counsel to receive up to 33.3% of the Maximum Settlement Amount. And the requested award of attorney's fees and costs is a reasonable percentage of a settlement of this size.

The common fund doctrine has been approved by the courts, including the Fifth Circuit. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 643(approving the use of percentage of recovery method in common fund cases). Courts recognize that an appropriate method for determining the award of attorneys' fees is a percentage of the total value of benefits afforded to class members by the settlement. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8, 2005) ("there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[1]

This is consistent with the view that the percentage awarded as attorney's fees is "intended to mirror practice in the private marketplace." *Strougo v. Bassini*, 258 F.Supp.2d 254, 262 (S.D.N.Y. 2003); *cf. In re Prudential-Bache Energy Income P'ship Sec. Litig.*, MDL 888, 1994 WL 150742, at *1 (E.D. La. Apr. 13, 1994)(a percentage fee award is "intended to approximate the market-what private counsel ordinarily would charge in a contingent fee contract."). The "customary contingency" for wage and hour cases in

---

[1] *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage approach and holding that use of lodestar/multiplier method was abuse of discretion); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

this market is the range of 35 to 40%. *See Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir. 2001). Fees of 33-40% are commonplace. *See, e.g., Castilla v. Fogo de Chao*, Case No. H-08-869 (S.D.Tex. Oct. 3, 2008) (Smith, MJ) (33%); *Skadowski v. KBR Tech. Servs., Inc.,* Case No. 4:05-cv-4124 (S.D. Tex. Aug. 25, 2006) (40%); *Garcia v. Maintenance, Inc.*, Case No. 4:05-cv-03924 (S.D. Tex. June 16, 2006) (40%).

The fee award here represents 33.3% of the total recovery. *See* Burch Dec. at ¶ 34. This is *below* the customary contingency in this market. *Id.* Moreover, it is justified giving the risks faced by Class Counsel, including a substantial risk of non-payment. *Id.* at ¶¶ 30-33 (describing some of the risks faced in this case). Finally, a comparison of Class Counsel's fee award with the total amount recovered reveals the fee request is well within a reasonable percentage of the total fund recovered for the Classes. *See* Dkt. 66 at p. 6, §§ 3-4.

As part of the settlement agreement, the parties agreed that Class Counsel shall be entitled to recoup their reasonable litigation costs and associated expenses, not to exceed $20,000. *See* Dkt. 66 at p. 6, § 4. These litigation expenses include filing fees, court costs, mediator's fees, legal research charges, travel expenses (which, given most of this case was litigated in California, were substantial), and delivery charges, all of which are costs normally billed to and paid by the clients. *See* Burch Dec. at ¶ 34. These costs were reasonably incurred in the prosecution of this matter and should be reimbursed.

**6. CONCLUSION.**

For these reasons, and the reasons stated in this Court's preliminary approval order (Doc. 70), Rodgers respectfully requests this Court: (1) grant final collective and class certification; (2) grant final approval of the settlement; and (3) dismiss this case with prejudice.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ Rex Burch**
_____
Richard J. (Rex) Burch
S.D. Tex. No. 21615
Texas Bar No. 24001807
*Attorney-In-Charge for Plaintiffs*
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

## CERTIFICATE OF CONFERENCE

This motion is unopposed.

**/s/ Rex Burch**
_____
Richard J. (Rex) Burch

## CERTIFICATE OF SERVICE

I served this document on all parties via the Court's ECF system.

**/s/ Rex Burch**
_____
Richard J. (Rex) Burch